CITY OF RICHMOND ET AL. V. JAMES V. ALLRED, ATTORNEY
GENERAL.

Motion No. 11,362.   Decided May 10, 1934.
(71 S. W., 2d Series, 233.)

*C. L. Dutton,* of Richmond, and *John D. McCall* and *W. P. Dumas,* both of Dallas, for relators.

On proposition that obligations created under Articles 1111 to 1118, R. S., 1925, do not come within the term "debt," and that all qualified voters of the city, whether property taxpayers or not, can vote at an election to determine whether such obligations shall issue, relators cite:   City of Houston v. Allred, 123 Texas, 334, 71 S. W. (2d) 251; City of Dayton v. Allred, 123 Texas, 60, 68 S. W. (2d) 172.

PER CURIAM.—Relators seek permission to file a petition for the issuance of a writ of mandamus to compel the Honorable James V. Allred, Attorney General, to approve revenue bonds to the amount of $45,000, proposed to be issued by the City of Richmond under the authority of Articles 1111 and fol-

lowing; Revised Civil Statutes of 1925, as amended by Chapter 122, Acts Regular Session of the 43rd Legislature (p. 320). Respondent refused to approve the bonds, assigning as a reason for his refusal that the transcript of the proceedings showed that the city commission by its order for the election submitted the question as to the issuance of the bonds to the resident qualified voters of the city, when under the Constitution such question should have been submitted to and determined by only qualified electors who owned taxable property in the city and who had rendered the same for taxation.

The petition shows that the bonds are sought to be issued for the purpose of purchasing an existing water plant and to construct extensions and improvements to the water system, and that the bonds are to be payable from and secured by an exclusive first lien on, and pledge of, all the revenues of the city's entire waterworks system, after deduction of reasonable operation and maintenance expenses. The order for the election and the notice published state that the proposition for the issuance of the bonds shall be submitted to the resident qualified voters of the city. The order directing the issuance of the bonds states among other things that a majority of the qualified voters of the city voting at said election have sustained the proposition to issue the bonds, 123 voting for the issuance and 1 against it.

The statute under which these bonds are sought to be issued (Article 1112 as amended) provides that no light or water system shall be encumbered for more than $5,000 except for purchase money or to refund any existing indebtedness, until the encumbrance is authorized by a majority vote "of the qualified voters of such city."

Sections 3 and 3a of Article 6 of the Constitution are as follows:

"Sec. 3. All qualified electors of the State, as herein described, who shall have resided for six months immediately preceding an election, within the limits of any city or corporate town, shall have the right to vote for Mayor and all other elective officers; but in all elections to determine expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town; provided, that no poll tax for the payment of debts thus incurred, shall be levied upon the persons debarred from voting in relation thereto."

"Sec. 3a. When an election is held by any county, or any number of counties, or any political sub-division of the State, or any political sub-division of a county, or any defined district

now or hereafter to be described and defined within the State and which may or may not include towns, villages or municipal corporations, or any city, town or village, for the purpose of issuing bonds or otherwise lending credit, or expending money, or assuming any debt, only qualified electors who own taxable property in the State, county, political sub-division, district, city, town or village where such election is held, and who have duly rendered the same for taxation, shall be qualified to vote and all electors shall vote in the election precinct of their residence."

■ These two sections in plain language prescribe property ownership as an essential qualification for those who vote in any election held in a city for the purpose of determining whether an expenditure of money shall be made by the city. The inclusive phrase, "all elections to determine expenditure of money" used in Section 3, is not restrained by any qualification or limited by any exception. The more explicit language of Section 3a makes it clear that the qualification prescribed is not intended to have application solely to elections held for the expenditure of money procured by taxation, or which may result in an increase of the tax burden.

■ While it is true that revenue bonds issued under Articles 1111 and following, as held in City of Dayton v. Allred, 123 Texas, 60, 68 S. W. (2d) 172, do not create a debt within the meaning of Sections 5 and 7 of Article 11 of the Constitution, undoubtedly an election for the issuance of such bonds is held for the purpose of determining the expenditure of money. The proposition to be voted upon is whether the city shall issue and sell revenue bonds and use the proceeds for the purpose of building, purchasing or improving waterworks, light plants, etc. One voting for the issuance of the bonds thereby necessarily aproves the expenditure of the proceeds of the bonds.

■ It is suggested in the argument filed that it is to be presumed that the election officers did their duty and permitted only those who were property owners to vote. Such presumption cannot be indulged in a proceeding of this character where relators must show a clear right to the extraordinary writ. There is no affirmative showing in the petition that the question was submitted to be voted upon only by those who owned taxable property and had rendered the same for taxation. On the contrary, it appears from the petition that the election order and the notice of the election named "the resident qualified voters of said city" as those who should be entitled to

vote. It is not to be presumed that the election officials did not interpret this language to include all persons who might be qualified to vote at any election held in the city for any purpose.

Since the transcript submitted when the bonds were presented for approval failed to show that the proposition for the issuance of the bonds was submitted to be voted upon only by qualified electors who owned taxable property in the city and who had rendered the same for taxation, respondent was justified in refusing to approve the bonds.

The motion for permission to file the petition for writ of mandamus is overruled.